**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **DARLENE DAVIS SMITH,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **CIVIL ACTION NO: 11-00204-KD-M** |
| | ) | |
| **WEISER SECURITY SYSTEMS, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

<u>**ORDER**</u>

*Pro se* Plaintiff Darlene Davis Smith (Smith) filed her amended complaint against defendant Weiser Security Systems, Inc., (Weiser) pursuant to the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et. seq* (the ADA).  (Doc. 13).  This action is now before the Court on Weiser's motion for summary judgment and supporting documents (Docs. 48-49), Smith's response and supporting documents (Doc. 52), and Weiser's reply and supporting documents. (Doc. 55).  Upon consideration, and for the reasons set forth herein, the motion for summary judgment is GRANTED.

**I. Procedural Background**

On August 25, 2011, Smith filed her amended complaint wherein she brings one cause of action against Weiser for violation of the ADA. (Doc. 13).  Smith alleges that she is a qualified individual with a disability in that she has a mental and physical impairment (mental illness and back problems) that substantially limitsa major life activity; that Weiser is a covered entity and employer as contemplated in the Americans with Disabilities Act; that she is able to perform the essential functions of her job with or without reasonable accommodation; and that Weiser failed or refused to provide Smith reasonable accommodation. (Doc. 13, p. 3-4).  Smith seeks

declaratory and injunctive relief, back pay, compensatory damages, reasonable attorney's fees, and costs. (*Id.*, p. 5).  On September 14, 2011, Weiser answered the complaint. (Doc. 21). Weiser, in relevant part, denied Smith's allegations of violation of the ADA but admitted that it is an employer within the meaning of 42 U.S.C. § 12111(5)(A).  (*Id.*)

Counsel for Smith moved to withdraw, their motions were granted, and Smith now proceeds *pro se*. (Docs. 31-36).  The parties engaged in discovery. (Docs. 25, 35, Rule 16(b) Scheduling Order and Amended Scheduling Order).  Now, Weiser has filed its motion for summary judgment, Smith filed her response, and Weiser filed its reply. (Docs. 48-49, 52, 55). Therefore, the motion is ready for review by the Court.

## II. Findings of Fact

### A. Weiser Security Systems, Inc.

Weiser is a private security company which employs Security Officers responsible for protecting, safeguarding, and securing assets, personnel, customers and visitors of Weiser's clients. (Doc. 48-1, p. 2, Sutherlin Affidavit).  Jack Sturgill was the Branch Manager of the Mobile office during most of Smith's employment. (Doc. 51, p. 1, Sturgill Affidavit).  Charlene-Lee Sutherlin was the Vice President of Human Resources during the entirety of Smith's employment. (Doc. 48-1, p. 2, Sutherlin Affidavit). Weiser's President and Chief Executive Officer is Michael L. Weiser. (Doc. 48-1, p. 43, Weiser Affidavit).

### B. Essential functions of a Security Officer for Weiser

Actual job duties may vary from post to post, but all Security Officers must be able to perform the essential job functions listed on the back of Weiser's Pre-Application, with or without a reasonable accommodation. (Doc. 48-1, p. 2, Sutherlin Affidavit). Those essential job functions are:

2

Stand for a complete 8-12 hour shift.

Walk carrying 5 pounds of equipment for an 8-12 hour shift.

Climb a stairwell consisting of 10 flights, in an emergency.

Squat and bend to read gauges.

Climb in and out of a tractor trailer while conducting searches.

Read ID badges up to 3 feet away, regular print.

Drive a vehicle continuously for 8-12 hour shift.

Endure temperature extremes for 8-12 hour shifts.

Operate fire fighting equipment easily and quickly, after being trained.

Respond to an emergency situation by moving quickly to investigate or use reasonable force to prevent a crime in progress.

Open and close 70 pound, 35 feet long gates.

Lift or drag up to 150 pounds for 25 feet, in an emergency.

Recognize through the sense of smell both usual and unusual odors.

See, recognize, identify and describe objects in poorly lighted areas.

Hear, recognize and identify both usual and unusual sounds in noisy conditions.

(Doc. 48-1, p. 41, Weiser's Exhibit C).

Weiser has two other essential job functions for Security Officers: 1) the ability to remain awake and alert for an entire eight to twelve hour shift and 2) regular work attendance. (Doc. 48-1, p. 3, Sutherlin Affidavit).

**C. Smith's employment with Weiser**

Smith began working as a part-time Security Officer for Weiser in October 2007. (Doc. 13, p. 1, Amended Complaint; Doc. 48-1, p. 2,  Sutherlin Affidavit). Smith's first assignment was at Rooms-To-Go. (*Id*. p. 3, ).  She also worked at several different sites in and around the Mobile area, including Cypress Cove, Red Roof Inn, and Lafayette Square in 2010 and Lafayette

Square in 2011. (*Id*.;  Doc. 55-1, p. 1-10, Weiser Timekeeping Report).

On January 5, 2011, Smith was an "emergency call in" to work at Lafayette Square Apartments. (Doc. 52-3, p. 30, Dep. Smith). That assignment required "constant standing" which caused an increase in Smith's back pain and aggravated an ankle injury. (*Id*.)  On the morning of January 6, 2011, Smith sent a text message to Carolyn Loper, Weiser's Field Supervisor,  stating "I'm taking off - - I was on the weekend shift. I was taking off the 7th and the 8th or the 8th and the 9th because of back problems." (Doc. 52-3, p. 87, Dep. Smith; Doc. 52-1, p. 3-4, Smith memorandum).  Smith also included a text message to Sturgill that she would "bring in a doctor's note,  because that was the rule of being in the company." (*Id*.)

Smith sought medical treatment for her increased back pain. (Doc. 52-3, p. 39, Dep. Smith).  Smith had a doctor's appointment on January 10, 2011, went to the emergency room on or about January 11, 2011, and was referred to The Orthopaedic Group where she saw  Dr. Howard on  January 19, 2011. (Doc. 48-1, p. 16, Dep. Smith).  Dr. Howard diagnosed low back pain and referred Smith to pain management doctors. (*Id*.)  Smith testified that Dr. Howard "did not say I would have limitations.  He said he was going to refer me to pain management so they can determine if there was limitations." (Doc. 52-3, p. 38, Dep. Smith).

Smith never saw the pain management doctors. (Doc. 52-3, p. 42, Dep. Smith) ("I wasn't able to see pain management because they only take referrals and insurance patients, and without insurance, they couldn't see me at that time"); (Doc. 48-1, p. 24, Dep. Smith) ("I never met with them because of the insurance problem").  Smith never provided Weiser with a return to work clearance from the pain management doctors. (Doc.  48-1, p. 3-4, Sutherlin affidavit; Doc. 51, p. 2, Sturgill Affidavit) (". . . the only medical documentation Darlene Smith ever provided to me was a doctor's note referring her to pain management on March 2, 2011.  Said document did not

4

contain any work restrictions and did not excuse her absence. I also asked Darlene Smith on several different occasions following January 5, 2011 to provide me with a return to work date, but she never did."); (Doc. 52-1, p. 4, Smith's Response, "Plaintiff submitted her private physician's note to Weiser . . . as promised on March 2, 2011").

Smith never returned to work with Weiser and her last contact with Weiser was on April 4, 2011. (Doc. 52-1, p. 5, Smith Response, "Since January 5, 2011 through April 4, 2011, Plaintiff was in contact with Weiser . . . The Defendants never assigned her a Post."); (Doc. 51, p. 3, Stugill Affidavit, "I asked Darlene Smith on several occasions to let me know when she was able to return to work, but she never did.");[1] (Doc. 48-1, p. 3, Sutherlin Affidavit, "In response to an email dated April 3, 2011, sent from Darlene Smith to Michael L. Weiser, wherein Darlene Smith informed Mr. Weiser that she was going to allow the Social Security Administration to determine her availability to continue working for Weiser, I responded on April 4, 2011 stating, "Thank you for the update.  As stated in my previous email correspondences, please let us know when you are available to return to work as a Security Officer.' Darlene Smith never again contacted Weiser regarding her ability to return to work.").

Smith never provided Weiser with any limitations on her ability to perform the essential functions of her work and never asked Weiser to provide her with any reasonable accommodation. (Doc. 51, p. 2, Sturgill Affidavit; Doc. 48-1, p. 4, Sutherlin Affidavit) (Doc. 52-3, p. 42, Dep. Smith, p. 44) ("I wasn't able to see pain management . . . ); (Doc. 48-1, p. 24, Dep. Smith) ("I never met with them . . . ").

---

[1] Weiser considered Smith to be on medical leave and kept her on their employee roll at least until August 31, 2011. (Doc. 52-4, p. 59-60, Unemployment Compensation trial transcript) (Q. . . . "she is still on the books with you if she were to bring you a release today then you would at least be able to look for an assignment for her; is that correct? A.  That's correct.")

Smith is no longer looking for work.  She is receiving Social Security disability benefits.

(doc. 48-1, p. 27, Dep. Smith).

### D. Doctor Howard's Office Notes, Referral for pain management, and Doctor's

### Certificate

Dr. Howard's records as provided by Smith include the following:

1)  A fax cover sheet on Dr. Smith's letterhead dated February 25, 2011, indicating a fax was sent to "PPSA"  "Phy Pain Spec ___" . . .  "From The Desk of Dr. C. Howard" (Doc. 52-6, p. 23, Smith's Exhibit M).  The note on the fax cover sheet reads "Please consider this patient for pain management with your group & advise.  Thanks! Pam ___". (*Id*).  The sheet indicates that a total of three pages were faxed to the Physician Pain Specialist.

2) An undated patient information sheet containing basic background information about Smith such as her address, emergency contact information, insurance, etc. (*Id*., p. 24).

3)  An "Office Note"  dated January 19, 2011, wherein Dr. Howard.  His assessment was "Chronic pain"  and his plan was "She wishes to see pain management. We agree with this assessment and will see her back prn." (*Id*., p. 25).

4)  A "Doctor's Certificate" dated January 19, 2011. (*Id*., p. 26).  The Certificate is a fill-in-the-blank form from the Alabama Department of Industrial Relations sent to Smith to take to Dr. Howard as part of her claim for unemployment compensation. The Certificates instructs that it should be returned to the "Montgomery UC Call Center". On the Certificate, Smith's occupation is shown as "Executive Secretaries". Dr. Howard certified that he treated Smith for low back pain, answered "Yes" to the question of whether Smith was "able to perform the duties of his/her usual occupation", and indicated that she could do so as of January 19, 2011.

This form indicates that Smith filed her claim for unemployment compensation on January 9, 2011, that the form was mailed to Smith on January 13, 2011, that Dr. Howard completed and signed the form on January 19, 2011, and that Smith signed the form on January 19, 2011.

(Doc. 52-6, p. 23-26, Smith's Exhibit M).

### E. Smith's Social Security disability benefits

Smith began to receive Social Security disability benefits in 1985 for mental illness -

paranoid schizophrenia. (Doc. 48-1, p. 11, Dep. Smith); (Doc. 52-3, p. 63, Dep. Smith).  In 2007, at the time she was hired by Weiser to work part-time, Smith was disabled due to mental illness and back problems and was on a trial work period. (Doc. 13, p. 2, Amended Complaint). After the initial nine month trial work period, she was placed on extended trial work period. (Doc. 48-1, p. 11-12).  In order to maintain her Social Security benefits, Smith's income from Weiser could not exceed $1,000.00 per month. (*Id*., p. 12).  Smith was still subject to the extended trial work period as of January 2011 (Doc. 52-3, p. 24, Dep. Smith) ("I never got a notice about stopping the trial work . . .").

In February 2011, Smith was notified by the Social Security Administration that between August 2008 and January 1, 2011, she had earnings which were considered substantial gainful activity and that she had been overpaid approximately $22,000.00.  Her monthly benefits were terminated.  She requested reinstatement and a waiver of the overpayment.  Both were denied. She appealed and an administrative hearing was held over a year later on March 15, 2012.  Her monthly benefits were reinstated at that time.  In April 2012, the Administrative Law Judge granted the request for waiver of the overpayment (Doc. 52-6, p. 10-13, copy of the Administrative Law Judge's decision, dated April 25, 2012).  Smith is still receiving Social Security disability benefits. (Doc. 48-1, p. 27, Dep. Smith).

**F. Smith's unemployment compensation claim**

On January 9, 2011, four days after her last shift with Weiser, Smith filed for unemployment compensation with the Alabama Department of Industrial Relations.[2] (Doc. 52-1, p. 4, Plaintiff's Memorandum in Support of Plaintiff's Opposition to Motion for Summary Judgment).  Initially, her claim was denied on basis that she had been terminated for

---

[2]  Smith had sent a text to Weiser that she would be off work on January 8th or 9th.

misconduct.[3] (Doc. 52-6, p. 34 (Decision on Unemployment Compensation Claim).  Smith

appealed the Examiner's initial determination.  On February 28, 2011, a telephonic  appeal

hearing was held hearing before the Administrative Hearing Office (AHO) (Doc. 52-6, p. 34).

Smith and Jack Sturgill as the "employer representative", both testified. (*Id*., p. 39).

Smith testified that Dr. Howard told her she "can work but it'd be limitations but he was

gonna leave it up to the pain management. He referred me to a pain management clinic." (Doc.

52-6, p. 52, hearing transcript).  Smith testified that she told Sturgill when they met on January

25, 2011, that

> I was waiting for my doctor's referral to the pain management clinic and . . . to
> get an appointment to see the pain management clinic for my back. And I was
> going to . . .  go by the policy of the company.  As [Sturgill] stated earlier, I
> cannot return back to work without the doctor's referral, so that's what I'm
> waiting on. It's company policy that when you're . . . off work that you can't
> return to work without the doctor's referral or the doctor's comments, so. So, I'm
> waiting, I cannot give him a letter at this time because I'm waiting on the doctor.

(Doc. 52-6, p. 55, hearing transcript).  Smith explained

> "I do have the doctor's referral, but I still have to meet with the pain management
> clinic, and I'm awaiting their call for me an appointment, and when I get that
> letter from the doctor, I will submit it to Mr. Sturgill as required by our policy."

(Doc. 48-1, p. 23, Dep. Smith).

Smith also testified that on the morning of January 19, 2011, she received a call from

Carolyn Loper, her supervisor at Weiser.  Ms. Loper told Smith that work for ten hours a week

was available and Smith told Loper that she would "talk to her after I met with my doctor." (Doc.

52-6, p. 61).  Smith saw Dr. Howard later that same day. (Doc. 52-6, p. 23-26).

Weiser's representative Jack Sturgill testified that as of February 28, 2011, the day of the

---

[3]  After Smith applied for unemployment compensation, the firm representing Weiser
incorrectly told the Alabama Department of Industrial Relations that Smith was discharged for
misconduct. (Doc. 52-6, p. 33).

hearing, Smith was still employed but on medical leave pending a clearance from her doctor to return to work. (Doc. 52-6, p. 45-47, hearing transcript). Sturgill testified that he had not seen any doctor's notes or records and had asked Smith to provide them. (Doc. 52-6, p. 61). He also confirmed that Loper had offered Smith ten hours of work but Smith declined because she had not yet seen the doctor. (Doc. 52-6, p. 61, hearing transcript).

Ultimately, the AHO found that Smith was not eligible for benefits. (Doc. 52-6, p. 34-35, Decision on Unemployment Compensation). The AHO modified the decision based on the inaccurate information that Smith had been terminated for misconduct and found that

> A determination as to whether the claimant has voluntarily left the employment without good cause connected with work under Section 25-4-78(2) of the Unemployment Compensation Law shall remain pending until such time as the claimant become[s] able to return to work with the listed employer and promptly presents herself back to the employer for work.
>
> However, the claimant is subject to a disqualification under the provisions of Section 25-4-77(a)(3) of the Unemployment Compensation Law effective January 9, 2011. This determination of ineligibility continues until such time as the claimant can provide sufficient evidence of her ability to work and she meets all other eligibility requirements.

(Doc. 52-6, p. 35)

Smith appealed that decision to the Alabama Board of Appeals for the Department of Industrial Relations. Her appeal was not accepted and no hearing scheduled (Doc. 52-6, p. 38).

Smith appealed to the Circuit Court of Mobile County, Alabama. Trial was held on August 31, 2011 (doc. 52-4, p. 2-68, trial transcript). The Circuit Court held that Smith was "qualified to receive unemployment benefits in accordance with Section 25-4-77(a)(3). . . dating back/beginning March 2, 2011". (Doc. 52-4, p. 1, Order dated November 28, 2011).

The date of March 2, 2011 is relevant because Smith testified at trial that on March 2, 2011, she delivered the Doctor's Certificate showing that she could return to her usual occupation as of January 19, 2011, to Administrative Assistant April Bush at Weiser. (Doc. 52-

4, p. 35-36 , trial transcript).  At trial, when shown the Doctor's Certificate, Sturgill was asked

"When was the first time you actually saw this document?" and he answered "Today." (Doc. 52-

4, p. 47, 48).  Sturgill also testified that if had he seen this Certificate, Smith would have been

put back to work. (Doc. 52-4, p. 48).

      Later, at deposition in this action, Smith testified that Dr. Howard "signed a document

that I could work." (Doc. 48-1, p. 17, Deposition p. 40).  Smith was asked whether she had

provided that document to Weiser and Smith responded: "It was a note that he signed stating that

I could work. . . .  I don't know if I submitted it to you or not, but it was in the records on the

unemployment case." (*Id*.).  Smith testified that on March 2, 2011, by leaving it with

Administrative Assistant April Bush,  she gave Sturgill a copy of Dr. Howard's note referring

Smith to pain management. (Doc. 48-1, p. 3 (Q. That was Dr. Howard's note with the referral,

correct? A.  That's the one that I submitted, yes.").  [4]

### G. Smith's disabling conditions

      As of January 5, 2011, Smith was disabled because of mental illness, paranoid

schizophrenia, and "diabetes, sleep apnea, chronic back pain and the ankle injury." (Doc. 48-1, p.

27, 32-34, Dep. Smith).  Diabetes does not limit her activity (*Id*., p. 33-34).

      At the time Smith left work January 5, 2011, her chronic back pain was at nine on a scale

of one to ten, limited her ability to walk,  and she could not stand for "more than 20, 15 minutes

at a time." (Doc. 48-1, p. 9-10).  Also,  as of that time, "sitting would bother" her foot and ankle

and she would "have to sit in a hard chair on my back." (*Id*., p. 10).  Smith "could run but not as

fast as I could before January." (*Id*., p. 10-11).  Smith could not have returned to work at the

---

[4]  Smith testified that she "got that document on that same day" as the unemployment
compensation hearing - February 28, 2011, and "I submitted that document to [Sturgill] on
March 2nd." (Doc.  48-1, p. 23, Dep. Smith).

assignment she had in January 2011, because she could not stand. (*Id.*, p. 37). Smith testified as follows:

> But January the 10th or 12th when I come back, I couldn't have done Lafayette Square. I just couldn't, no standing at all, no. I would have limitations on it if I had come back. I just didn't know what limitations. I would have had limitations, but I wouldn't have known what they were without the doctor telling me. That's why I wanted to wait and talk to the doctor before I got back with Ms. Loper.

(Doc. 48-1, p. 37). Had she returned to work, she would have asked for a post with limited walking, limited use of stairs, and rest periods. (*Id.*, p. 36-37).

At the time of the deposition in March 2012, Smith's sleep apnea now causes her to "fall asleep at any spur of the moment." (*Id.*, p. 34).[5] Smith now uses a wheelchair because of her chronic back pain. (*Id.*, p. 34). Smith believed that she could work at a security job where she monitored security cameras or could drive a car or a golf cart. (*Id.*, p. 35).

### H. Smith's communication with Weiser after January 5, 2011

After Smith left work following her January 5, 2011 shift, she made the following contact with Weiser:

January 6, 2011

> Smith testified as follows:

>> I stated on a text to Carolyn Loper and the field supervisor, I'm taking off - - I was on the weekend shift. I was taking off the 7th and the 8th or the 8th and the 9th because of back problems. And I put in the text, Jack, I will bring in a doctor's note, because that was the rule of was the rule of being in the company.

> (Doc. 52-3, p. 87, Dep. Smith); (Doc. 52-1, p. 3-4, Smith memorandum).

January 19, 2011

---

[5] "Q. How about sleep apnea? Does that limit you in any way? A. Well, now it does. I have it real bad where I fall asleep at any spur of the moment. . . . It's worse now." (Doc. 48, p. 34, Exhibit B, Dep. Smith).

Loper, Weiser's field supervisor, called Smith "about 10 hours a week",

Smith told Loper that she "was waiting for my pain management appointment to

see if I had limitations and that I would get back with her." (Doc. 48-1, p. 16,

Dep. Smith).[6]  (Smith had an appointment with Dr. Howard later on January 19,

2011).

February 9, 2011

E-mail from Smith to the Weiser Corporate Support Center:

> . . . On Tuesday, February 8, 2011, I received via certified mail . .
> . a letter from Mr. Jack Sturgill, Carolyn Loper, and April Bush,
> informing me that my cell phone was reporting expired and / or
> disconnected.  Staff claims that I was unreachable for assignments.
> I immediately called Carolyn Loper . . . On occasion, I will call
> Ms. Loper myself to inquire about employment on which to date,
> there is 'Lack of Work' to report.

 (Doc 52-5, p. 28).

February 10, 2011

Smith emailed Weiser, with a subject line "availability for employment" :

> jack Sturgill/carolyn loper/april bush
>
> I am still available for employment as needed.  I haven't heard
> from you all.

(Doc 52-5, p. 36, Smith's Exhibit K).

Upon receipt of the above two emails, Sutherlin responded to Smith:

---

[6]  Smith did not perceive this call as an offer of work - "I never turned down that offer.  It wasn't an offer.  She was telling me about it.  I never said, no, I won't take it or, yes, I'll take it. I didn't tell her.  I said, I'm waiting on the doctor's note - -  I mean, the referral, pain management, and I'll get back with her." (Doc. 48-1, p. 19, Dep. Smith) ("Q. You're waiting on the opinion of the pain management doctor letting you know what your restrictions were? A. Yes. Q. And what you would be able to do? A. Yes.  I told her I would get back with her on that.  Q.  And did you? A.  I never received my pain appointment, but I did keep in touch with them and told them that I'm available for work.")

We are confused about your availability. Are you available to be placed or are you unable to work at this time?

Please let us know.

Thank you,

Charlene Lee-Sutherlin

VP - Human Resources

(Doc 52-5, p. 45, Smith's Exhibit K).

February 14, 2011

Also, Jack Sturgill emailed Smith:

Darlene,

Let me know when you can come by the Office.

Thanks

(*Id*.)

February 14, 2011

In response, Smith wrote:

o.k.  I will contact as soon as possible.

Darlene

(*Id*).

February 18, 2011

Smith wrote to Sutherlin:

Charlene.  did u receive the legal document[7] from april bush in mobile, al she scanned to you regarding me?

---

[7]  The email string does not identify the "legal document" Smith discusses with Sutherlin but Sutherlin's response indicates that these documents must have been part of Smith's application for unemployment compensation.

(Doc. 52-5, p. 35, Smith's Exhibit K).

Sutherlin responded:

> Darlene,
>
> Yes, April sent me the document you are referring to.  We are
> confused however, because we have been waiting for you to let us
> know your availability.  It seems you have already filed for
> unemployment.
>
> The branch office will be available to discuss your reassignment
> through business hours on Wednesday February 23, 2011.  Please
> contact Jack Sturgill or Carolyn Loper with your availability.
>
> If we don't hear form you by that time, we will assume that you
> are resigning your position with Weiser Security Services, Inc.
>
> Thank you,
>
> Charlene Lee-Sutherlin, VP Human Resources

(*Id.*)

Smith responded:

> I am awaiting info myself.  if I don't hear something by feb 23,
> 2011.  I will assume weiser's document to be true.
>
> Darlene.

(*Id.*)

February 19, 2011

Smith emailed Michael Weiser, President and Chief Executive Officer of Weiser Security
Services, Inc:

> dear mr. weiser,  this is my contact info for weiser's requests.

(*Id.*)

February 20, 2011

Smith emailed:

> dear ms. Sutherlin / mr. weiser

I did call weiser's dispatch services after receiving your email.  I left message for Jack Sturgill and Carolyn Loper that I will be in the office on date specified.  I tried to verify Ms. Loper's message, but had not response to my call.  I do not have Jack's cell phone number so I will email him at the weiser's office in Mobile Branch.

Thanks

darlene smith

Later that morning, Smith emailed Sturgill with a copy to Michael Weiser:

dear mr. Sturgill

I am emailing you for verification of my dispatched message to you on meeting with you and Carolyn on 2 23 2011 at the mobile, al branch office. did you receive the message? if so, please disregard this email.

darlene

(Doc. 52-5, p. 31, Smith's Exhibit K).

February 22, 2011

Smith responded to Sturgill

dear jack:

this is a reminder of our meeting set for friday, 2 25 2011 at 10:20 a.m.

darlene

(Doc. 52-5, p. 44, Smith's Exhibit K).

Sturgill responded to Smith:

Ms. Smith,

I have a previously scheduled meeting out of town that day.  To schedule a meeting with me, you need to speak directly to me.  I can be available Thursday morning.

(Doc. 52-5, p. 30, Smith's Exhibit K).

February 23, 2011

Smith responded to Sturgill:

> mr. Sturgill: I am not available on thursday at all. I have appointments myself on that date.  let us just meet sometime next week.
>
> Darlene
>
> ps. you may call me on my cell phone . . .

(*Id*.)


February 24, 2011

Sturgill met with Smith on or about February 24, 2011. (Doc. 51, Sturgill Affidavit at 2).

Sturgill informed Smith that she was not terminated. (*Id*.)  He requested medical documentation

for her leave and a date or estimated date when Smith would be available to return to work. (*Id*.).

February 27, 2011

Smith emailed Michael Weiser a copy of her resume with a cover email stating:

> I am submitting my resume' to you as an alternative offer of continued employment with your agency.  I am a disabled employee, hired in 2007 . . .
>
> I have had my hearing and appeal with Mr. Jack Sturgill and unemployment on 2 28 2011.  According to . . . Sturgill . . . I am not terminated from Weiser Security.  With that statement in mind, Mr. Weiser, I am willing to continue my employment with the agency.
>
> In the event there is "Lack of Work" in the security guard area, I would like to submit my qualifications for other positions throughout the company, such as Site Supervisor, Office Staff personnel or any other possible opening that may be open in the near future.  I enjoy working with Weiser Security and wish to be of service in all aspects.
>
> Sincerely,
>
> Ms. Darlene Davis Smith
>
> Security Guard

(Doc. 52-5, p. 32, Smith's Exhibit K).

Michael Weiser states that Smith left a voice message that same day "stating that she could not work as a Security Office because of medical issues." (Doc. 48-1, p. 43, Michael Weiser Affidavit). Smith "disputes voicemail sent to" Michael Weiser. (Doc. 52, p. 11, ¶ 26).

February 28, 2011

> Sutherlin responded to Smith:
>
> Darlene,
>
> I was forwarded your email by Mr. Weiser. At this time the only positions we have available are Security Officer positions. Please contact myself or Jack Sturgill when you are able to return to work as a Security Officer, with or without a reasonable accommodation.
>
> Charlene Lee-Sutherlin
>
> VP-Human Resources

(Doc. 52-5, p. 38, Smith's Exhibit K).

March 1, 2011

> Smith emailed Sturgill:
>
> Dear mr. Sturgill:
>
> I am having financial problems at the present time. I have lost my social security benefits due to over working hours while employed. . . . I lost my health insurance because of lost of benefits which results in not being able to keep doctor's referral for pain management . . . which will cause a delay in submitting a letter to you . . . However, I will submit the doctor's notes to you on Wednesday, March 2, 2011 as stated in the hearing.
>
> Darlene

(Doc. 52-5, p. 41, Smith's Exhibit K).

March 2, 2011

Smith delivered to Stugill, leaving the documents with Administrative Assistant April

Bush, a cover letter stating:

> Enclosed is a copy of my doctor's referral office notes you have
> requested in our Hearings and Appeals conversation on 2-28-2011.

(Doc. 48-1, p. 50, Exhibit G); (Doc. 48-1, p. 3, Dep. Smith).  Smith's cover letter does

not mention the Doctor's Certificate.

> Attached to the letter was a fax cover sheet dated February 25, 2011, indicating a
> fax to "PPSA"  "Phy Pain Spec ___" . . .  "From The Desk of Dr. C. Howard".

(Doc. 48-1, p. 51).

The note on the fax cover sheet reads

> Please consider this patient for pain management with your group
> & advise.  Thanks! Pam ___.

(*Id*).

> The fax cover sheet indicates that there were two pages attached (*Id*).

However, no other pages were included with Weiser's exhibits.


March 9, 2011

Smith emailed Sturgill and Sutherlin:

> I have been trying to contact the weiser security staff on several
> occasions to get the last date in which I have to submit my
> physician's letter. . . . I have a meeting with social security on the
> 16th of March and must report my status of employment.  . . .
> Again, I need a "last date" to report back to work from weiser . . .

(Doc. 52-5, p. 42).

March 11, 2011

Sutherlin responded to Smith:

> Darlene,
>
> Nothing has changed since our last communication.  When you are
> available to begin working again, please contact the branch with
> your availability.

Thank you,

Charlene Lee-Sutherlin

(Doc. 48-1, P. 53, Weiser's Exhibit H)

April 3, 2011

Smith e-mailed Michael Weiser and copied Sutherlin:

Dear Mr. Weiser,

I am going to allow the social security administration [to] determine my availability to continue working with your agency. I was on the work trial period with them.

(Doc. 48-1, p. 55, Weiser's Exhibit I).

April 4, 2011

Sutherlin responded to Smith stating, Darlene,

Thank you for the update.

As stated in my previous email correspondence, please let us know when you are available to return to work as a Security Officer.

Thank you,

Charlene Lee-Sutherlin VP- Human Resources

(Doc. 48-1, p. 3, Sutherlin Affidavit; Doc. 48-1, p. 55, Weiser's Exhibit I).

**III. Summary Judgment Standard of Review**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a) (Dec. 2010). The recently amended Rule 56(c) provides as follows:

*(1) Supporting Factual Positions.* A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

**(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only),

admissions, interrogatory answers, or other materials; or

>    **(B)** showing that the materials cited do not establish the absence or
>    presence of a genuine dispute, or that an adverse party cannot produce admissible
>    evidence to support the fact.

>    *(2) Objection That a Fact Is Not Supported by Admissible Evidence.* A party
>    may object that the material cited to support or dispute a fact cannot be presented
>    in a form that would be admissible in evidence.

>    *(3) Materials Not Cited.* The court need consider only the cited materials, but it
>    may consider other materials in the record.

>    *(4) Affidavits or Declarations.* An affidavit or declaration used to support or
>    oppose a motion must be made on personal knowledge, set out facts that would be
>    admissible in evidence, and show that the affiant or declarant is competent to
>    testify on the matters stated.

FED.R.CIV.P. Rule 56(c) (Dec. 2010).

Weiser, as the party seeking summary judgment, bears the "initial responsibility of
informing the district court of the basis for its motion, and identifying those portions of 'the
pleadings, depositions, answers to interrogatories, and admissions on file, together with the
affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."
*Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991) (quoting *Celotex Corp. v.
Catrett*, 477 U.S. 317, 323 (1986)).  If the nonmoving party fails to make "a sufficient showing
on an essential element of her case with respect to which she has the burden of proof," the
moving party is entitled to summary judgment.  *Celotex,* 477 U.S. at 323.  "In reviewing whether
the nonmoving party has met its burden, the court must stop short of weighing the evidence and
making credibility determinations of the truth of the matter.  Instead, the evidence of the non-
movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Tipton v.
Bergrohr GMBH-Siegen*, 965 F.2d 994, 998-999 (11th Cir. 1992), *cert. denied*, 507 U.S. 911
(1993) (internal citations and quotations omitted).

## IV. <u>Analysis</u>

Smith's amended complaint contains one cause of action under the ADA alleging that Weiser discriminated against Smith based on her disability.  Specifically, Smith alleges that Weiser "failed or refused to provide" her with a "reasonable accommodation." (Doc. 13, p. 3, ¶ 20, Amended Complaint).

The ADA prohibits discrimination "against a qualified individual on the basis of disability in regard to ... discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).  The Court of Appeals for the Eleventh Circuit has explained that "[t]o establish a circumstantial prima facie case of discrimination under the ADA, the plaintiff must demonstrate that he (1) is disabled, (2) is a qualified individual, and (3) was subjected to unlawful discrimination because of his disability." *Shepard v. United Parcel Service, Inc*., 2012 WL 833369, *1 (11th Cir. March 14, 2012) (slip copy) (footnotes omitted) (citation omitted).

As to the first element, Smith "is disabled if [she] has '(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) [is] regarded as having such an impairment.'" *Shepard*, at *1 citing 42 U.S.C. § 12102(2). "Major life activities include 'functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.' " *Id*. (citations omitted).

The relevant factors for determining whether an individual has a disability include: "(i) The nature and severity of the impairment; (ii) The duration or expected duration of the impairment; and (iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." *Shepard*, at *2 (quoting *Garrett v. University*

21

*of Alabama at Birmingham Bd. of Trs.*, 507 F.3d 1306, 1311 (11th Cir. 2007) (quoting 29 C.F.R. § 1630.2(j)(2) (2007)).  "An employer's decision to place an employee on disability leave of absence is evidence of a record of impairment." *Shepard*, at *2 (citing *Pritchard v. Southern Co. Services*, 92 F.3d 1130, 1134 (11th Cir. 1996)).

In this action, Smith has a record of mental illness and was placed on medical leave of absence[8] because of her chronic back pain and ankle pain. This pain results in substantial limitations on the ability to sit, stand, walk, run and climb.  At the deposition in March 2012, Smith testified that her back pain and ankle pain were now so severe that she uses a wheelchair and she is even more limited in her ability to stand, walk, run, or climb.  Also, there is no dispute of fact that Smith has not returned to work.  Thus, the major life activity of working is also substantially limited.

Viewing the evidence in the light most favorable to the non-moving party Smith, and raising all inferences in her favor, Smith has established the first prong of her prima facie case, that she has a physical impairment which substantially limits a major life activity.  Therefore, Smith is disabled within the meaning of the ADA.

Next, Smith must establish the second prong of the prima facie case, that she is a "qualified individual"; specifically, a person with a disability who "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8); *Holly v. Clairson Industries, L.L.C.*, 492 F.3d 1247, 1256 (11th Cir. 2007);  *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1255 (11th Cir.

---

[8]  At times, in her deposition, Smith testified that she was not on medical leave, but instead was off from work and could not return without a doctor's approval.  However, in her amended complaint, Smith stated that "[i]n January 2011, Plaintiff requested a medical leave due to her disability." (Doc. 13, p. 2, ¶ 9).

2001).  Smith must show either that she "can perform the essential functions of [her] job without

accommodation, or, failing that, ... that [she] can perform the essential functions of [her] job with

a reasonable accommodation." *Holly*, 492 F.3d at 1256. "The Eleventh Circuit has held that in

addition to possessing the required skills necessary to perform the essential job functions, an

employee must be able to demonstrate those skills by reporting to work on a regular basis,

thereby making attendance an essential function of most jobs." *Leslie v. Cumulus Media, Inc.*,

814 F. Supp. 2d 1326, 1347 (S. D. Ala. 2011) (citing *Jackson v. Veterans Admin.*, 22 F.3d 277

(11th Cir. 1994)).

  If Smith establishes that she is a "qualified individual with a disability," who can perform

the essential job function with a reasonable accommodation, Weiser "may show that the

otherwise 'reasonable accommodation' would impose an undue hardship" on Weiser. *Id*. citing

42 U.S.C. § 12112(b)(5)(A).  "Under the ADA, discrimination includes the failure to make

'reasonable accommodations to the known physical ... limitations of an otherwise qualified

individual ... who is an ... employee, unless [the employer] can demonstrate that the

accommodation would impose an undue hardship on the operation of [its] business.'" *See Barton

v. Board of Regents of University System of Georgia*, 2012 WL 2053531, 2 (11th Cir. June 8,

2012) (slip copy) (quoting 42 U.S.C. § 12112(b)(5)(A)).  However, reasonable accommodation

does not mean that Weiser must accommodate Smith "in any manner in which [she] desires . . .

but [instead] only to a reasonable accommodation." *Shepard*, at *2 (citing *Stewart v. Happy

Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285-1286 (11 Cir. 1997)).

  Weiser argues that Smith cannot establish that she is a "qualified" individual under the

ADA because she cannot perform the essential functions of her job with or without a reasonable

accommodation. Weiser points out that Smith cannot stand for an eight to twelve hour shift,

climb stairs, walk carrying five pounds of equipment for an eight to twelve hour shift, climb ten

flight stairs in an emergency, remain awake and alert for an eight to twelve hour shift, and attend

work regularly. Weiser also argues that Smith is not a qualified individual because she took a

leave of absence when she removed herself from work on January 5, 2011, never provided

Weiser with a return to work date, never provided Weiser with any limitations on her ability to

work, and never requested that Weiser provide a reasonable accommodation to enable her to

perform the essential functions of her work.

In response, Smith states that she is able to perform the essential functions of her job with

or without reasonable accommodation and that Weiser failed or refused to provide Smith a

reasonable accommodation. (Doc. 52-1).[9]  Smith argues that she was in contact with Weiser

from January 5, 2011 until April 4, 2011, "stating she was available to work with or without

accommodations . . ." (Doc. 52-1, p. 5).  Smith also states that she "submitted her private

physician's note to Weiser . . . as promised on March 2, 2011" but Weiser never assigned her a

post and she was terminated without notice. (*Id.*).

The requirements for a Security Officer position with Weiser include, in relevant part,

the ability to "Stand for a complete 8-12 hour shift; Walk carrying 5 pounds of equipment for an

8-12 hour shift; Climb a stairwell consisting of 10 flights, in an emergency;  . . . Climb in and out

of a tractor trailer while conducting searches; . . ."  and "Respond to an emergency situation by

moving quickly to investigate or use reasonable force to prevent a crime in progress; . . . ."

(Doc. 48-1, Weiser's Exhibit C).  Inherent in any occupation is the ability to remain alert and

---

[9]  In her response to Weiser's statement of facts, Smith provides a list of different places she worked for Weiser and how she met the essential functions of her job. (Doc. 52, p. 2-5). However, these jobs were held before Smith left work on January 5, 2011.  The issue is not whether Smith could perform the essential functions in the past, but whether she could perform the essential functions of the job after January 5, 2011.

awake during the work shift and to show up for work.

Smith's deposition testimony shows that she cannot stand for long periods of time. (Doc. 48-1, Dep. Smith at 21, 83). Smith testified that "[s]tanding is a problem because I couldn't stand after January 2011. I couldn't stand no more than 20, 15 minutes at a time." *Id.* at 21. She also testified that she could not walk or climb stairs for an extensive period of time. (*Id.* at 21, 92-94). Now, Smith is using a wheelchair. (*Id.* at 94). She also testified that she falls asleep without warning. (*Id.* p. 34). Considering the evidence in the light most favorable to Smith, she has not produced sufficient evidence to create a genuine issue of material fact as to whether Smith can perform the essential functions of the Security Officer position without accommodation, such that she would be a "qualified individual" under the meaning of 42 U.S.C. §1211(8).[10]

The question then becomes whether Smith can perform the job with a reasonable accommodation. Smith "bears the burden of identifying an accommodation, and of demonstrating that the accommodation allows [her] to perform the job's essential functions." *Lucas,* 257 F.3d at 1255–56. "Whether an accommodation is reasonable depends on specific circumstances." *Terrell v. USAir*, 132 F.3d 621, 626 (11th Cir.1998). Also, "[i]f a disabled employee requires an accommodation to perform the essential functions of her job, she must make 'a specific demand for an accommodation' and must prove that the proposed

---

[10]   Smith now asserts that she submitted a Doctor's Certificate to April Bush, Administrative Assistant at Weiser, on March 2, 2011, certifying that she has low back pain but is able to perform her usual occupation as of January 19, 2011, along with Dr. Howard's referral to pain management (Doc. 52, p. 8-9, ¶ 21). The Doctor's Certificate appears to be Dr. Howard's Doctor's Certificate which was sent to the Alabama Department of Industrial Relations as part of Smith's unemployment compensation claim. (Doc. 52-6, p. 26). Dr. Howard marked "Yes' to the question whether Smith could return to her usual occupation which was incorrectly identified on the form as "Executive Secretaries."

accommodation is reasonable." *Leslie,* 814 F. Supp. 2d at 1347, citing *Gaston v. Bellingrath Gardens & Home, Inc.*, 167 F.3d 1361, 1363–64 (11th Cir.1999). "Only after the employee has satisfied this burden and the employer fails to provide that accommodation can the employee prevail on a claim that her employer has discriminated against her." *Gaston*, 167 F.3d at 1364.

In response to the motion for summary judgment, Smith submitted no evidence that she ever requested a reasonable accommodation. The evidence submitted - primarily the email communications and Smith's deposition testimony - shows that she consistently told Weiser that the pain management physicians would determine her limitations and that she would provide a physician's letter after she had been seen by pain management.

The only evidence which remotely could be construed as a request for a reasonable accommodation is the February 27, 2011 e-mail from Smith to Michael Weiser, which included her resume, and wherein she asks if there are other positions available in the company such as Site Supervisor or a clerical position. (Doc. 48-1, Michael Weiser Affidavit).  However, the undisputed evidence shows that Weiser did not have that type of job available, but instead had an opening for Security Officers. (Doc. 52-5, p. 38, Smith's Exhibit K) (Sutherlin's response to Smith "At this time the only positions we have available are Security Officer positions").  Weiser was not required to create a position for Smith. *See Barton*, 2012 WL 2053531, at 2 ("Fulfillment of his requested accommodation—the availability of a full-time administrative assistant—went beyond job restructuring and would have required GSU to create a new position and hire a new individual in spite of budget cuts." *Id*., citing *Terrell*, 132 F.3d at  626-627 for its "holding that an employee's requested accommodation of reassignment to a part-time job was unreasonable because no part-time jobs were available at the time of the request and fulfilling the request would have required the employer to create a new position"; *see also Terrell*, at 626,

(employer is not required "to promote a disabled employee", "reassign the employee to an occupied position" or "create a new position to accommodate the disabled worker." ) (quoting *White v. York Int'l Corp*. 45 F.3d 357, 362 (10th Cir. 1998). Smith's "failure to identify a reasonable accommodation is fatal to her ADA claim." *Earl v. Mervyns, Inc.,* 207 F.3d 1361, 1367 (11th Cir. 2000).

Considering the evidence in the light most favorable to Smith, she has not produced sufficient evidence that she is a "qualified individual" under the meaning of 42 U.S.C. §1211(8). Because Smith has failed to satisfy this second element of her prima facie case for disability discrimination, that she is a qualified individual who can perform the job with or without a reasonable accommodation, the Court need not reach the third element (discrimination). Since Smith has failed to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof," Weiser is entitled to summary judgment. *Celotex,* 477 U.S. at 323. Accordingly, summary judgment is GRANTED in favor of Weiser Security Systems, Inc.

## V. Conclusion

Upon consideration of the foregoing, Weiser Security System, Inc.'s Motion for Summary Judgment (Doc. 48) is **GRANTED.**

As provided in Rule 58 of the Federal Rules of Civil Procedure, a Final Judgment shall issue by separate document and contemporaneously with this Order.

**DONE** and **ORDERED** this the 31st day of July, 2012.


**s/ Kristi K. DuBose**
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**